Alright, good afternoon. And our next case for our docket is People v. Javis Boose, 5-24-1133, and we'll be doing this as a hybrid. And I believe Ms. Pitt, you're going to be arguing for the appellate, correct? And Mr. Harris, you'll be taking this for the appellate, correct? Correct. Alright, okay. You may begin. Thank you very much. Good afternoon. I'm Mr. Harris, and I'm the appellate on Javis Boose. This very small officer, Ricky Perry, is sentencing and investigating this case, including interrogating my client, Javis Boose. Mr. Boose maintained during his motion to suppress, and again during post-conviction proceedings, that after he wrote his right to silence, Officer Perry badgered him in a hallway off-camera to get him to make a statement that was later used against him at trial. Based on evidence that was unavailable at the time of the motion to suppress at trial, we now know that this was something that Perry stemmed out of, as this court acknowledged in its prior decision remanding for further post-conviction proceedings, Perry's perjury about an off-camera interrogation in another case calls into question his credibility here. Yet, upon remand, the circuit court ignored this new evidence. The court explicitly relied on the trial judge's finding at the time of the motion to suppress that Perry was credible, a finding made without the benefit of the state later admitting publicly that Perry is an unreliable perjurer, specifically about off-camera interviews and interrogations. This ruling was manifestly erroneous, as it ignored the new evidence about Perry and essentially ignored this court's decision. For its part, the state, in its brief, in this appeal, likewise, did not deal with the new evidence of Perry's perjury. Not that it meant hearing below, the state also did not try to rehabilitate Perry's credibility. Because Perry cannot be believed, Bruce's testimony stands unchallenged and showed by the preponderance of the evidence that Perry did not scrupulously honor his indication of his right to silence. His later inculpatory statement should have been and should be suppressed. This constitutional violation is not harmless, beyond a reasonable doubt. My opening brief highlights the various reasons the remaining evidence here was not overwhelming, including witnesses being on drugs and alcohol and finding their way to the witness stand via Detective Perry, factors that this court noted in its previous decision to call their testimony into doubt. The two witnesses also testified at trial that they were doing whatever they could to avoid liability in this case. Deontay Rice even said he had heard rumors on the street about him being involved, so he wanted to avoid liability. The state's argument that the evidence was overwhelming improperly relies on the statement from Bruce that should have been suppressed. That's the wrong approach, because the question is whether the remaining evidence, other than the unconstitutionally obtained statement, is overwhelming. And yet, even with that statement at trial, the jury still sent a deadline note showing that without it, the evidence was far from overwhelming. My brief also explains why the error was not harmless, beyond a reasonable doubt, under the two other approaches to this question. First, because the error contributed to the verdict, where the state relied on my client's statement in closing, and the jury asked for and reviewed the statement during deliberations. And second, because the statement was not cumulative to properly admitted evidence, as this court has acknowledged in standards decided in my briefs, and felt that our statements are uniquely damaging. The state in its brief did not address these aspects of harmless error analysis. If there are no questions, Your Honors, for all the reasons asserted in the briefs, and here today, we would ask this court to reverse the denial of Mr. Bruce's post-conviction petition, vacate his convictions and sentence, and re-enact for a new trial. Any questions? No questions. All right. Thank you, Counsel Yeltsin. I'm Rebecca. All right. Good afternoon, Your Honors and Counsel. May it please support, my name is Alexis Pitt, and I represent the state in this matter, people of the state of Illinois versus Jarvis Foose. The defendant in this case argues that the state's use of his second videotaped interview, which I believe is the contention that the defense is bringing up, that the detective coerced the defendant in the hallway and brought him back in for the second videotaped interview, was a violation of his Fifth Amendment right against self-incrimination, and that this error was not harmless beyond reasonable doubt. The state's position on this is very straightforward. There was no Fifth Amendment violation in this case. The defendant was properly Mirandized by the detectives when he was interviewed, and knowingly and intelligently waived said rights. And the statements made by the defendant to Detective Perry were properly admitted by the trial court. At the outset of each videotaped interview, the defendant stated he understood both times his Miranda rights, and both the detectives, Detective Perry and Detective Flohr, as well as the defendant, signed a waiver of Miranda rights. And crucially, during each videotaped interview, when the defendant invoked first his right to remain silent, and then in the second interview his right to an attorney, questioning immediately ceased, and the videotape was stopped and the defendant was taken down into custody. There's nothing in the record in this case to suggest that the detectives did not scrupulously honor the defendant's rights for an attorney or to remain silent, and nor did the jury hear any statements by the defendant outside of these videotaped interviews. The motion to express hearing that the defendant references, the motion to express was granted. Detective Perry did testify at the defendant's trial, but any of the statements made outside of the interviews were not discussed at trial, nor did the jury ever hear of them. The jury did hear from multiple eyewitnesses, one of whom was the defendant's cousin, and one of whom was his friend, and they had witnessed the defendant with a 9mm handgun prior to the incident, and his own cousin stated that he saw the defendant shoot the victim and run away. And counsel, what is our standard of review on this matter? At this stage, on a third stage of evidentiary hearing? It would be manifestly erroneous. Okay, and the trial court found that the defendant had not presented any evidence, is that correct? That is correct, Your Honor. Okay. If you'll excuse me. The trial court heard the evidence of the misconduct in the Joshua Custer cases, who the defendant is referencing, at the third stage hearing, and the defendant argued that this misconduct, had it been known at the time, would affect his conviction. The court denied that motion, saying that it was not manifestly erroneous. The date of the defendant's case was, the incident in the case, excuse me, was December 2nd, or 22nd, excuse me, 2006. The motion to express hearing in controversy in the Custer case was January 21st, 2009. Prior to the conviction and sentencing of the defendant, about eight months had passed between that and the revelation of Detective Perry's misconduct in another case. The trial court had found that the defendant had yet to present any evidence to show that the misconduct on the part of Detective Perry in this case, had there been any, that has not been shown, just that there was misconduct in another unrelated case. Counsel, let me ask you, if I may. I did review the transcript of the third stage evidentiary hearing, and then I watched the videos of these interviews. And so, just to make sure I had my facts straight. So, here the defendant's testifying that Perry essentially tried to put this on him in the hallway after the first interview. And then he testifies that he wants to go back in front of the camera. I think he says, he's trying to put, to tell whoever's looking, he's trying to put this on me, and I got to at least say for the record I didn't do this. And then he goes back into the interview room, and the officers read him his Miranda rights. He signs a Miranda waiver. He's told he has a right to an attorney. And then the defendant says he wants to talk with him again, and he denied anyone promised him or threatened him in any way. And then he says, I believe he says, that he was high on crack at the time, didn't know what he was doing, and then he said, I quote, I made a mistake. And at that point, then he pauses for a while, and he then wants to terminate this interview. Is that how this all transpired? You're correct, Your Honor. And did he ever say anything during the second interview about wanting to set the record straight? No, Your Honor. Okay. And the trial court essentially didn't find his testimony credible in light of that.  Is that right? Okay. Thank you. To piggyback off of that point, the defendant at the third stage hearing had said that there was a violence, like altercation between him and the detective. They come back into the interview room and are all relatively calm. And at that point, he says he made a mistake. The detectives kind of push him a little bit on to, you know, what do you mean by that? And he decides he wants his attorney, and the questioning ceases. The jury did see that video. They did not hear about any altercation or testimony that happened in the hallway. Again, I think case law is clear whether the jury believed the defendant or, you know, took, I made a mistake as to mean he had shot the defendant. That's up to the jury. And they decided that in this case. If Your Honors don't have any other questions. No questions. No questions. Thank you so much. Therefore, the state requests that you deny their petition. Well, you both did a great job. This is a 7-11, so we'll let you do it.  Nice work. I probably shouldn't have referred you as counsel then. Yeah. Well, it's fine. Close enough, right? All right. Okay. And then for rebuttal, Mr. Harris. Yes, thank you, Your Honors. Just three quick points in regard to Your Honors' most recent question about what happened in the hall and then not saying anything about setting the record straight. Nothing on the video during the second interview. We don't have him saying anything like that on video. The detective carries a testimony that the motion was suppressed. He didn't say when it didn't go back in the second video. He said that my client said, I want to go on the record I did not tell you I shot him, which implies there was some, in that instance, something happening off camera, very similar to the Joshua Custer case where he perjured himself about not interviewing off camera and then to Custer's videotape interrogation, he referred to that off camera questioning and discussion. That's not on the video here. What we have is some video clips that the timing doesn't quite line up and they overlap. So we don't have definitive proof on video that he said this. We just have various testimony that the motion was suppressed saying that my client said, I want to go on the record I did not tell you I shot him. That's at page 30 of the transcript. Two other quick points. The state's first argument here was that because there are new Miranda warnings, there can be no violation here. That's not the law. The new Miranda warnings are just one of four factors to be considered here. If new Miranda warnings alone are enough, that would be the only factor, but they're not. The other factor is whether the interrogation immediately halted. Here it didn't halt. It just turned the camera off. But it continued in the hallway within the minute that they got up and moved into the hall. Whether a significant amount of time passed between the first and second interrogation, again, no significant amount of time because it never really stopped. The final factor is whether the second interrogation was about a different subject. Here it was the exact same subject. So those other three factors weigh in favor, in my client's favor. The fresh Miranda warnings, once they were battered into confessing in the hall and coming back in to making their statement, do not erase those other three factors. And lastly, the discussion about misconduct in another case, and that wouldn't pertain to this case, Perry's perjury in the Joshua Custer case. But this court already held that it does affect his credibility here. I don't want to remand him for further post-conviction proceedings. His willingness to lie under an off-camera interrogation in that other case certainly affects how we now view his testimony in this case. And the trial judge at the time of the motion to suppress did not have the benefit of that knowledge, which is why it's important to review this on post-conviction proceedings where this outside witness has come in and cast a different light on his testimony and the state hasn't tried to claim, below or now, that McIntyre is a credible witness. That just leaves my client's testimony unopposed. It's consistent at the time of the motion to suppress and the post-conviction proceedings. So if there are no further questions based on this, again, I'm going to ask for reversal and remand for a new trial. All right. No questions. Thank you very much. We will take this matter under advisement. We will issue a ruling in due course. Have a great day. Thank you. And thank you, Your Honors, for accommodating my request for review this matter. Sure thing.